UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHAUN JACKSON AND CHRISTOPHER WILSON | CIVIL ACTION |
| VERSUS | NO: 10-2843 |
| WILSON WELDING SERVICE, INC. | SECTION: "S" (4) |

**ORDER AND REASONS**

**IT IS HEREBY ORDERED** that Wilson's Welding Services, Inc.'s Motion to Strike (Doc. #84) is **DENIED**.

**IT IS HEREBY ORDERED** that Wilson's Welding's Motion for Summary Judgment as to Christopher Wilson's Claims (Doc. #74) is **GRANTED** as to Wilson's claims brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and those claims are **DISMISSED WITHOUT PREJUDICE.** The motion is **GRANTED** as to Wilson's racial discrimination claim brought under 42 U.S.C. § 1981[1], and those claims are **DISMISSED WITH PREJUDICE**. The motion is **DENIED** as to Wilson's retaliation and hostile work environment claims brought under § 1981.

**IT IS FURTHER ORDERED** that Wilson's Welding's Motion for Summary Judgment as to Shaun Jackson's Claims (Doc. #75) is **GRANTED** as to Jackson's racial discrimination and retaliation claims brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

---

[1] Wilson did not oppose Wilson's Welding's motion for summary judgment with respect to his racial discrimination claims.

§ 2000e, et seq., and 42 U.S.C. § 1981, and those claims are **DISMISSED WITH PREJUDICE**.[2] The motion is **DENIED** as to Jackson's hostile work environment claims brought under Title VII and § 1981.

## BACKGROUND

In 2008, Innovative Energy Services ("IES") was managing the refurbishing of an oil rig named "Ocean Patriot" in Port Fourchon, Louisiana. IES subcontracted with Wilson's Welding to provide certified pipe and structural welders, fitters, and painters.

On June 12, 2008, Wilson began working for Wilson's Welding as a fitter on the Ocean Patriot. He worked: June 12, 2008 to June 29, 2008; July 6, 2008 to July 20, 2008; and, July 28, 2008 to August 3, 2008. Jackson began working for Wilson's Welding as a welder on the Ocean Patriot on June 21, 2008. He worked from June 21, 2008 to July 20, 2008, and then from July 28, 2008 to August 3, 2008. Plaintiffs contend that during their time on the Ocean Patriot they were subjected to numerous incidents involving racial epithets and disparate treatment.

On August 3, 2008, Wilson was terminated after the general contractor's supervisor, John Axsom, complained to Wilson's Welding's supervisor on the Ocean Patriot, Rikki Gewalt, that Wilson had not performed a task properly. Thereafter, Jackson quit because he depended on Wilson for transportation.

Jackson filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that he was constructively terminated as a result of discrimination and retaliation, and that

---

[2] Jackson did not oppose Wilson's Welding's motion for summary judgment with respect to his racial discrimination claims.

he was subjected to a hostile work environment. Jackson and Wilson thereafter filed this action under Title VII and § 1981 alleging racial discrimination, retaliation, and hostile work environment. Wilson's Welding filed a motion for summary judgment on all of plaintiffs' claims.

## ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### B. Title VII Administrative Remedies Exhaustion

Before filing a lawsuit under Title VII, a plaintiff must first exhaust his EEOC administrative remedies. Complaints that are not addressed or reasonably related to discrimination charges filed

with the EEOC cannot form the basis of Title VII claims in a subsequent lawsuit. See Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir.1970).

Because Wilson did not file an EEOC claim, he cannot bring a lawsuit against Wilson's Welding under Title VII. Therefore, Wilson's Welding is entitled to summary judgment on Wilson's Title VII claims, and those claims are DISMISSED WITHOUT PREJUDICE.

## C. Retaliation Under § 1981 and Title VII[3]

Plaintiffs claim that Wilson's Welding retaliated against them for their prior complaints of racial harassment in violation of § 1981 and Title VII.

Pursuant to § 1981, all persons within the jurisdiction of the United States have the same rights, regardless of race, to enter into and enforce contracts, including the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b). Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a). Section 1981 claims and Title VII claims are analyzed under the same methodology. Jenkins v. Methodist Hosp. of Dallas, Inc., 478 F.3d 255, 260 (5th Cir. 2007); see also Jones v. Robinson Prop. Group, L.P., 427 F.3d 987, 992 (5th Cir. 2005) ([T]the only substantive differences

---

[3] Section 1981 does not have an administrative remedy exhaustion prerequisite to filing a lawsuit. Caldwell v. Nat'l Brewing Co., 443 F.2d 1044, 1046 (5th Cir. 1971). Title VII is referenced because Jackson exhausted his administrative remedies and may maintain a cause of action against Wilson's Welding under that statute.

4

between the two statutes [is] their respective statute of limitations and the requirement under Title VII that the employee exhaust administrative remedies.").

A plaintiff bringing claims under Title VII or § 1981 can use either direct or circumstantial evidence to prove his case of intentional discrimination. Portis v. First Nat'l Bank of New Albany, Miss., 34 F.3d 325, 328 (5th Cir. 1994). Direct evidence is "evidence which, if believed proves the fact of discriminatory animus without inference or presumption." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002). "Because direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973)." Id. However, "the McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination." Id. (quoting Trans World Airlines, Inc. v. Thurston, 105 S.Ct. 613, 621-22 (1984)).

Plaintiffs have not submitted any facts that provide direct evidence of Wilson Welding's alleged retaliation. Instead, they allege that Wilson's Welding's termination of Wilson due to an alleged mistake, which forced Jackson quit, was a pretext, and that they were actually terminated in retaliation for prior complaints of racial harassment. Because this is a circumstantial evidence "pretext" case, the McDonnell Douglas test applies. See Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005).

In McDonnell Douglas Corp., the Supreme Court of the United States "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." St. Mary's Honor Ctr. v. Hicks, 113, S.Ct. 2742, 2746 (1993). Under this evidentiary framework, the plaintiff must first establish a *prima facie* case of

discrimination. Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2106 (2000). If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for the conduct. See Reeves, 120 S.Ct. at 2106. This burden is one of production, not persuasion and involves no credibility assessment. Id. If the defendant meets the burden, the presumption raised by the plaintiff's *prima facie* case disappears. Id.

Once the employer produces sufficient evidence to support a nondiscriminatory explanation, the plaintiff is given an "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. (internal quotation and citation omitted). The plaintiff must then demonstrate that the adverse employment action would not have occurred "but for" plaintiff's protected activity. Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005).

### 1. Plaintiffs' *Prima Facie* Case of Retaliation

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse action. Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 484 (5th Cir. 2008). A plaintiff who is unable to show a *prima facie* case cannot survive a summary judgment challenge. Byers v. Dallas Morning News, Inc., 209 F.3d 419, 429 (5th Cir. 2000).

#### a. Protected Activity

An employee engages in a protected activity if he opposes any unlawful employment practice, or makes a charge, testifies, assists, or participates in any manner in an investigation ,

proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a). "Complaining to supervisors about racial harassment is a protected activity." Carrera v. Commercial Coating Servs. Int'l, Ltd., 2011 WL 1439918, *4 (5th Cir. 4/14/2011) (citing Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427-28 (5th Cir. 2000)).

Plaintiffs complained to Gewalt and Wilson's Welding's management in Picayune, Mississippi about the racial harassment. Thus, they engaged in a protected activity.

### b. Adverse employment action

For an "adverse employment action" to be actionable under Title VII's retaliation provision, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006).

#### i. Wilson

Wilson has satisfied the second prong for establishing a *prima facie* case for retaliation, in that he alleges that he was terminated in retaliation for complaining about racial harassment.

#### ii. Jackson

Jackson claims that he was constructively discharged when Wilson was terminated because Gewalt, and thus Wilson's Welding, knew that he depended on Wilson for transportation.

Constructive discharge occurs when plaintiff shows that "working conditions were so intolerable that a reasonable employee in [his] position would [have felt] compelled to resign." Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 331 (5th Cir. 2004) (quotations omitted).

To survive summary judgment on a constructive discharge claim, plaintiff must show "aggravating factors" to justify departure, such as demotion, reduction in salary, reduction in job responsibilities, reassignment to menial or degrading work, reassignment to work under a younger supervisor, badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation, or offers of early retirement or continued employment on terms less favorable than the employee's former status. Id. (citations omitted). "Ultimately, to succeed on a constructive discharge claim, the plaintiff must show a greater degree of harassment than is required for a hostile work environment claim." Id. (citing Benningfield v. City of Houston, 157 F.3d 369, 378 (5th Cir. 1998)).

Jackson's allegation that he was forced to quit because he depended on Wilson for transportation does not satisfy the test for constructive discharge. He has not alleged any "aggravating factors" sufficient to establish that he was forced to quit because the work environment was intolerable. Indeed, he testified that he would have kept working on the Ocean Patriot for Wilson's Welding if he had transportation despite the alleged racial harassment. Therefore, Wilson's Welding's motion for summary judgment is GRANTED as to Jackson's retaliation claim brought under Title VII and § 1981 and those claims are DISMISSED WITH PREJUDICE.

   **iii. Causal Link**

To establish the causal link element of a *prima facie* case of a retaliation claim, the plaintiff need not meet the "but for" standard. Stroud v. BMC Sorftware, Inc., 2008 WL 2325639 (5th Cir. 6/6/2008). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation."

Cooper v. United Parcel Serv., Inc., 368 Fed. Appx. 469 (5th Cir. 2010) (quoting McCoy v. City of Shreveport, 492 F.3d 55, 562 (5th Cir. 2007)). However, "temporal proximity can only establish a causal link when it is connected to the decision maker's knowledge of the protected activity." Thompson v. Sumervell Cnty., Tx., 2011 WL 262357 (5th Cir. 7/1/2011) (citing Clark Cnty. Sch. Dist. v. Breeden, 121 S.Ct. 1508, 1511 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be very close.") (internal quotations and citation omitted).

Wilson alleges that Gewalt terminated him shortly after he went to Picayune, Mississippi to complain to Wilson's Welding's management about the racial harassment. Therefore, Wilson has alleged a causal connection between the protected activity and the adverse employment action that is sufficient to establish a *prima facie* case of retaliation.

### b. Wilson's Welding's Non-Discriminatory Justification

Because Wilson has established a *prima facie* case of retaliation, Wilson's Welding has the burden of production to articulate a legitimate, nondiscriminatory reason for their termination. See Reeves, 120 S.Ct. at 2106.

Wilson's Welding contends that Wilson was terminated because he performed some work improperly, and the Axsom, contractor's representative, demanded that Wilson be removed from the Ocean Patriot.

9

### c. Pretext

Because Wilson's Welding produced a non-discriminatory justification for Wilson's termination, Wilson's *prima facie* case disappears. Id. To survive summary judgment, Wilson must demonstrate by a preponderance of the evidence that Wilson's Welding's stated reasons for his termination were not its true reasons, but rather were pretext for retaliation. Id. Wilson must demonstrate that he would not have been terminated "but for" his complaint about racial harassment. Septimus, 399 F.3d at 608.

Wilson argues that the contractors representative did not demand his termination, but rather that Axsom allowed Gewalt to determine whether he would be terminated. Wilson argues that Gewalt's treatment of him became worse after he complained about the racial harassment and that Gewalt constantly tried to find fault with his work so that he could fire him. This demonstrates that there are disputed issue of material fact pertaining to the issue of pretext that preclude summary judgment on Wilson's retaliation claim. Therefore, Wilson's Welding's motion for summary judgment is DENIED as to Wilson's retaliation claim brought under § 1981.

## D. Racially Hostile Work Environment Under § 1981 and Title VII

To survive summary judgment on a racially hostile work environment claim, a plaintiff must establish that: (1) he is a member of a protected class; (2) he was subject to unwelcome harassment; (3) the harassment affected a term or condition of his employment; and (4) that the employer knew or should have known about the harassment and failed to take prompt remedial action. Howard v. United Parcel Serv., Inc., 2011 WL 5138719 (5th Cir. 2011) (racially hostile work environment

claim brought under § 1981) (citing <u>Turner v. Baylor Richardson Med. Ctr.</u>, 476 F.3d 337, 347 (5th Cir. 2007) (racially hostile work environment claim brought under Title VII).

In analyzing whether plaintiff was subjected to a racially hostile working environment, the court must apply a "totality-of-the-circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance." <u>Id.</u> (quotations omitted). Only when the workplace is "permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" <u>Nat'l R.R, Passenger Corp. v. Morgan</u>, 122 S.Ct. 2061, 2074 (2002) (quoting <u>Harris v. Forklift Sys., Inc.</u>, 114 S.Ct. 367, 370 (1993)). "Discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to support evidence of a hostile work environment claim." <u>Howard</u>, 2011 WL 5138719 (quotations omitted). However, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." <u>Id.</u> (quotations omitted). Conduct "that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview." <u>Harris</u>, 114 S.Ct. at 370. The Supreme Court of the United States has cautioned that these statutes do not impose a "general civility code," and that when the standards are "properly applied, they will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language.'" <u>Howard</u>, 2011 WL 5138719 (quoting <u>Faragher v. City of Boca Raton</u>, 118 S.Ct. 2275, 2284 (1998)).

11

As African Americans, plaintiffs were members of a protected class. Plaintiffs allege that in the short time they worked for Wilson's Welding, the work environment was racially hostile because their co-worker's called them "boy," used the word "n*****," told racial jokes, and wore Confederate flags almost every day. They allege that Gewalt, their supervisor and Wilson's Welding's management representative on the Ocean Patriot, was aware of this harassment, participated in it, and did not do anything to remedy the situation. They also allege that there was racist graffiti written by an unknown individual that said "n***** b******" and "f*** all n*****," and that Gewalt knew about it but did not take any action to remove it. Plaintiffs contend that the harassment affected the terms and conditions of their employment because they had segregated sleeping quarters on the rig that were inferior, and that they were assigned to the dirtiest jobs in the smallest tight working spots, and assigned the overhead welding. Further, they allege that a co-worker dropped a piece of metal close to Jackson and said, "I didn't scare ya'll boys did I?". Plaintiffs argue that the harassment caused them to be uncomfortable and angry, and that they could not completely focus on their jobs because of it.

Wilson's Welding argues that the alleged incidents of racial epithets and racial graffiti of unknown origin are not enough to establish that the alleged racial harassment affected the terms or conditions of plaintiffs' employment. Further, Wilson's Welding argues that they cannot be held responsible for the graffiti because the identity of the perpetrator is unknown. Wilson's Welding does not address the presence Confederate flags, its failure to remove the graffiti after its employees expressed their feelings about it, the metal-dropping incident, or the inferior work assignment allegations.

Plaintiffs have established that they are members of a protected class, were subjected to unwelcome harassment, and that they employer knew or should have known about the harassment and failed to take prompt remedial action. Further, there are disputed issues of fact regarding the pervasiveness of the harassment and whether it affected the terms and conditions of plaintiffs' employment. Therefore, Wilson's Welding's motion for summary judgment regarding plaintiffs' hostile work environment claims is DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that Wilson's Welding Services, Inc.'s Motion to Strike (Doc. #84) is **DENIED**.

**IT IS FURTHER ORDERED** that Wilson's Welding's Motion for Summary Judgment as to Christopher Wilson's Claims (Doc. #74) is **GRANTED** as to Wilson's claims brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and those claims are **DISMISSED WITHOUT PREJUDICE.** The motion is **GRANTED** as to Wilson's racial discrimination claim brought under 42 U.S.C. § 1981, and those claims are **DISMISSED WITH PREJUDICE**. The motion is **DENIED** as to Wilson's retaliation and hostile work environment claims brought under § 1981.

**IT IS FURTHER ORDERED** that Wilson's Welding's Motion for Summary Judgment as to Shaun Jackson's Claims (Doc. #75) is **GRANTED** as to Jackson's racial discrimination and retaliation claims brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981, and those claims are **DISMISSED WITH PREJUDICE**.

The motion is **DENIED** as to Jackson's hostile work environment claims brought under Title VII and § 1981.

New Orleans, Louisiana, this  4th  day of January, 2012.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**